IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| Tonya Rives, ) | |
|     Plaintiff; ) | |
| ) | |
| v. ) | Case: 3:11cv01145-GPM-SCW |
| ) | |
| Whiteside School District No. 115, ) | |
|     Defendant. ) | |

_____

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM

Plaintiff, by her undersigned counsel, responds to Defendant's Motion for Summary Judgment and in support states as follows:

Introduction

Tonya Rives was a middle school teacher for the Defendant Whiteside School District since 2006. In 2010, just before she would have received tenure, she was terminated, or non-renewed. Plaintiff submits that the reasons for her non-renewal were due to racial discrimination and retaliation for refusing to submit to sexual harassment by a co-worker, then-assistant principal Marshaun LeFlore (now Johnson). Plaintiff further alleges that her termination violates 42 U.S.C. §1981. The manifest existence of disputed fact in the record in this case completely negates summary judgment in all respects.

Summary Judgment Standard

When considering whether to grant a motion for summary judgment,

> The issue is simply whether the record and all inferences viewed in the light most favorable to the non-moving party reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

McGann v. Northeast Illinois Reg. Commuter R.R., 8 F.3d 1174 (7th Cir. 1993).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S.Ct. 2097, 2110 (2000) (discussing standard for granting judgment as a matter of law under Fed. R. Civ. P. 50, which is the "same" as the standard for granting summary judgment under Rule 56). "[T]he court should give credence to the evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (citations omitted). The Court must consider the entire record, but "disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 2102.

In determining whether summary judgment is appropriate all evidence and all inferences that can be drawn from the evidence are viewed in a light most favorable to the nonmoving party. Tolentino v. Friedman, 46 F.3d 645, 649 (7th Cir. 1994). Summary Judgment is not granted unless there are no triable issues. Bechtold v Physicians Health Plan of Northern Indiana, Inc., 28 F.3d 666, 671 (7th Cir. 1994).

### Credibility Determinations are Not Appropriate for Summary Judgment

However, it has long been established that it is inappropriate to resolve issues of credibility, motive and intent on motions for summary judgment. Hardin v. Pitney-Bowes, Inc., 451 U.S. 1008 (1981). It is equally clear that where such issues are presented, the submission of affidavits or depositions is insufficient to support a motion for summary judgment. Hardin, id. Summary judgment simply may not be granted when such matters as the defendant's motive and intent are questioned. Hardin, id. In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. See, Ritchie v. Glidden Co., 242 F.3d 713, 723 (7th Cir. 2001); Miranda v. Wis. Power & Light Co., 91 F.3d 1011, 1014 (7th Cir. 1996).

At stake in this case are credibility determinations, which by definition negate summary judgment, as demonstrated above.

First, a credibility determination exists with respect to whether the Illinois

3

School Code and the Whiteside School District Employee Handbook were followed in the area of teacher evaluations. Non-tenured teachers are to receive one evaluation per year for the first four years of employment, prior to tenure. Doc 65-2, p. 21, and Illinois School Code, 105 ILCS 5/24A-8. Plaintiff contends that she only received one evaluation during her entire four years with the District, and that was in 2009 and conducted by Marshaun LeFlore (now Johnson), and it was rated "excellent." Doc 65-1, pp. 11-62, 101-102; Doc 65-2, pp. 30-36. She has contended this ever since she was initially non-renewed in March 2010, expressing such to union co-president Sheryll Kosydor, and to IDES. Doc 65-8, p. 10, Exhibit 1. Kosydor also confirmed that she only saw the 2009 evaluation in a copy of Plaintiff's personnel file shortly after her non-renewal. Doc 65-8, pp. 13-14. While there is no dispute that she received this evaluation, what is in dispute is whether she received any other evaluations during her time employed with the district, as required by law. Defendant claims she received evaluations in 2008 and 2010, but Plaintiff disputes this (Rives Dep.—Doc 65-1, pp. 11-62,101-102, 198-ff). Defendant claims that her first evaluation is "missing." The second and fourth evaluations, Plaintiff claims, are fabricated documents which she testifies she had never seen until after her termination, when she sought (successfully) unemployment benefits. Doc 65-1, Exhibit 1 (IDES Documents), Exhibit 2 (audio file), Doc 65-2, pp. 37-47. Note that these two evaluations Plaintiff contends that these two evaluations

4

(allegedly dated January 5, 2008 and March 25, 2010, at Doc 65-2, pp. 37-47) were not in her personnel file when she inspected it in May 2010 with union representative and teacher Michael Murakami after her non-renewal. Murakami, for his part, testified that when he reviewed Plaintiff's personnel file with Plaintiff following her non-renewal, as her union representative, he found only "one or two evaluations" in the personnel file. Doc 65-6, p. 26. He did not find three or four, as Trelow contends were done and given to Plainitff. Murakami's testimony lines up with Plaintiff's, who contends that there was only one evaluation in her personnel file (Murakami remembered one or two, but could not remember if it was one or two). Murakami's testimony does not line up with Trelow's which asserts three or four evaluations allegedly in Plaintiff's file. Also it is noteworthy that the "suspect" evaluations (from 2008 and 2010) do not contain Plaintiff's signature as the "legitimate" 2009 one does. Also, the 2008 and 2010 evaluations do not indicate anywhere that Plaintiff refused to sign them.

  The testimony of union personnel and Plaintiff juxtaposed with that from Burke and Trelow and Johnson reveals a definite dispute of a material fact precluding summary judgment. Trelow admits that standard teacher evaluations follow a particular procedure, including a pre-observation worksheet, a sample lesson plan from the teacher, the evaluation itself, and a post-evaluation sheet (Doc 65-3, p. 60), but he and Burke deny that the pre-observation worksheet and post-

5

evaluation sheet need to be attached to the evaluation that is showed to the teacher and that ultimately goes into the teacher's personnel file as a matter of procedure. Johnson admits (concurring with Plaintiff) that the pre-observation worksheet is a necessary part of the evaluation that is showed to and discussed with the teacher and goes into the personnel file. The union personnel concur, as does Plaintiff, that all four items (or at least some combination of more than what Trelow and Burke allege are necessary and standard) were required to be attached to evaluations placed in teachers' personnel files. Doc 65-5, pp 26-28, Doc 65-6, p. 38, Doc 65-8, p. 15.

Pretext

Ron Trelow's testimony reveals pretext with respect to the non-renewal of Plaintiff's teaching contract. He states that she was non-renewed because she had difficulty getting along with students, parents, and staff, but could not name any parents that had trouble getting along with Plaintiff. He had accused Plaintiff of failing to return parents' phone calls and emails, but could not name any of these parents, nor did he even tell Plaintiff who they were (Plaintiff of course has always disputed that she failed to return parents' messages or phone calls). He couldn't recall how many complained about Plaintiff. Trelow Dep.—Doc 65-3, pp. 8-16, 31-32. Plaintiff also disputes Defendant's claims that she failed to return calls to parents, Doc 65-1, pp. 227-28). No written complaints or documented verbal

6

complaints from parents or other staff were produced or attached to Defendant's Motion for Summary Judgment.

Trelow could not have believed in good faith that Plaintiff committed the infractions that supposedly justified her termination because he refused to investigate the same by talking to teacher aides who were present in Plaintiff's classroom as witnesses to these supposed infractions. Doc 65-3, pp. 55-59. And on pages 120 and 121, an infraction which supposedly was a strike against Plaintiff involved a confidential email projected on a board where the entire classroom could see it. Trelow could not dispute that 1) the email was projected because Plaintiff was referring to it while returning a parent's phone call and 2) students who allegedly saw it were not authorized to be in the classroom at the time it was projected.

Peggy Burke, Whiteside School District Superintendent, admitted to never personally receiving complaints about Plaintiff from parents, which was supposedly the main reason she was not renewed. Doc 65-4, pp. 29. Along this same line, Johnson admitted to only having one conversation with Plaintiff regarding Plaintiff's behavior, and this before her 2009 evaluation in which Plaintiff received an "Excellent" rating. Doc 65-5, p. 24.

Race Discrimination and Sexual Harassment

There is also contradictory testimony regarding who specifically

7

recommended that Plaintiff be non-renewed. Principal Trelow states that it was not specifically recommended by then assistant principal Marshaun Johnson (Doc 65-3, pp. 11-13), while Superintendent Peggy Burke states that it was Johnson who recommended her non-renewal (Doc 65-4, pp. 37-38). Johnson herself states that it was not her who recommended that Plaintiff be non-renewed (Doc 65-5, pp. 20, 26).

    This is material because if Johnson recommended Plaintiff's discharge, it follows Plaintiff's rejection of her sexual advances sufficient to create a genuine issue of material fact with regard to Plaintiff being non-renewed out of retaliation. Johnson and Plaintiff's testimony conflicts where Plaintiff testifies that she and Johnson hung out as friends socially on a frequent basis, and discussed *inter alia* racial issues in the school district, Johnson's pending divorce, and Johnson's lesbianism. Doc 65-1, pp. 66-68, 127.  Johnson denies all of this (Doc 65-5, p And of course, Johnson denies sexually harassing Plaintiff by encouraging her to "try" lesbianism, and denies recommending her termination in retaliation for refusing the same, while Plaintiff contends that she was sexually harassed by Johnson and that Johnson recommended termination in retaliation against her for refusing Johnson's advances. Doc 65-1, pp. 129-160.

    Further, contradictory testimony exists in the record on the issue of disparate treatment between Plaintiff and others on the basis of race. Trelow could

not recall whether Plaintiff's claim that she received shorter lunch breaks than her white co-workers (and what was statutorily mandated, see 105 ILCS 5/24-9 (2008 version at Doc 65-2, p. 57) was true. Doc 65-3, pp. 33-34. There are also disputed issues of fact regarding whether Plaintiff was treated unfairly with regard to the availability of supplies and snacks for students on testing days (Doc 65-1, pp. 234-237; Doc 65-3, pp. 121-123). Also, the Illinois School Code at 105 ILCS 5/21A-20 requires that school districts provide mentors for new teachers for at least two years. Plaintiff claims that she never was given a mentor, at Doc 65-1, p.  Trelow claimed that Plaintiff was provided a mentor but later said he could not recall whether she was provided such, and claimed that the district only recently started providing mentors for teachers after she left. Doc 65-3, pp. 54-55. Burke also equivocated on this issue,

    On pages 79 and 80 of Trelow's deposition (Doc 65-3), he admits that no black teachers received tenure until after Plaintiff was no longer employed with the District, and after Plaintiff had filed suit in this matter with the Illinois Department of Human Rights. Trelow, Eschman, and Burke all testified that only two or three black teachers were ever hired by the district in over 30 years. Doc 65-4, pp. 43-44.

    <u>Credibility Revisited</u>

    The fact that Plaintiff's and Defendant's versions of the relevant facts in this case are such polar opposites is alone enough to preclude summary judgment.

What tips the scales even further away from granting summary judgment is the lack of credibility on Defendant's side, by virtue of the conflicting testimony described above between various of Defendant's witnesses on material facts. It is material whether Plaintiff received her evaluations yearly as required by law, and received a mentor as required by law, as her performance was allegedly the reason for the non-renewal. It is material whether Johnson sexually harassed and then retaliated against Plaintiff by recommending non-renewal. Finally, it is material whether contradictory testimony exists with regard to accounts of Plaintiff's supposed infractions, which goes to the issue of whether the reasons given for non-renewal were pretextual. The disputed testimony removes these issues from the realm of summary judgment. The contradictory testimony among Defendant's witnesses presents credibility issues which further negate summary judgment.

## Conclusion

Wherefore, Plaintiff urges this Court to deny Defendant's Motion for Summary Judgment, and to grant all other relief this Court deems just.

Plaintiff

By: ___s/ Jason R. Craddock___
Jason R. Craddock
Attorney for Plaintiff
29 S. LaSalle—Suite 440
Chicago, Illinois 60603
(312) 629-2818
Fax: (312) 629-2819

Email: captain1970@thelifeline.net or craddocklaw@att.net

Certificate of Service

The foregoing was served on July 3, 2013 via CM/ECF to:

Howard Small
Law Office of Small and Freeman, Ltd.
41 East University Avenue, Suite 3D
Champaign, IL 61820

By: ___s/ Jason R. Craddock___