IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TONYA RIVES, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 11−cv−1145−SCW |
| | ) |
| WHITESIDE SCHOOL DISTRICT NO. 115, | ) |
| | ) |
|        Defendant. | ) |

# ORDER

**WILLIAMS, Magistrate Judge:**

      This matter comes before the Court on Defendant Whiteside School District No. 115's Motion for Summary Judgment, which was filed on April 19, 2013. (Doc. 65). Defendant asks the Court to grant its summary judgment motion on Plaintiff Tonya Rives' claims of racial discrimination. (Doc. 65). Plaintiff brought claims under Title VII and § 1981, as well as a retaliation claim and a sexual harassment claim. (Doc. 44). The Court dismissed the retaliation claim and sexual harassment claim on September 20, 2013. (Doc. 91). Plaintiff initially failed to file any Response to the Motion for Summary Judgment, despite having been granted two extensions. (Docs. 68 & 69). In early July, the parties briefed the issue of whether Plaintiff should be allowed to file a Response. As part of that dispute, Plaintiff filed a proposed response (Doc. 74-1). Plaintiff later realized she forgot to attach exhibits to the proposed response, and moved to supplement it at Doc. 78 with exhibits. Plaintiff was then granted leave to file Doc. 74-1 without any change. (Doc. 79). Plaintiff filed a Response brief on July 18, 2013, but did not include any of the documents at Doc. 78. (Doc. 80). Plaintiff than later filed an Amended Response, to correct citation errors on August 15, 2013. (Doc. 85). No Reply was ever filed, and the time to do so has lapsed, making this

1

Motion ripe for disposition. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

## FACTUAL BACKGROUND

Defendant hired Plaintiff, a black female, on or about August 2006 as a full time middle school teacher. (Pl.'s Dep. p. 7). Her duties included creating and documenting lesson plans, instruction and assessment of students, participating in formal parent/teacher conferences, special education IEP meetings, and informal parent teacher communications. (Doc. 65-2, p. 5). Her classes included language arts, social studies, and study skills. (Doc. 65-2, p. 5).

Typically, new teachers must serve a four year probationary period before they are awarded tenure. *See* **105 ILCS 5/24-11**. As Plaintiff's four-year probationary period drew to a close, Defendant decided not to renew her contract, effectively terminating her employment. (Pl.'s Dep. p. 8). Linda Burke, Ron Trelow, and Marshaun (LeFlore) Johnson (hereinafter "Johnson"), as the administrators of Whiteside, made a recommendation to the School Board that Plaintiff's contract not be renewed. (Trelow Dep. p. 12). Trelow, the principal of Whiteside, recalls that the administrative team sat down to discuss placements for the up-coming school year, and decided that Plaintiff was consistently unpredictable in dealing with people. (Trelow Dep. pp. 13-14). The School Board passed a resolution not to renew Plaintiff's contract on March 31, 2010. (Doc. 65-2, p. 13). The School Board considered "concerns with unprofessional communication with some parents and inappropriate comments to students in class," when deciding to approve the resolution of non-renewal. (Doc. 65-2, p. 13). Plaintiff was sent a notice of non-renewal on April 6, 2010, which gave two reasons for her non-renewal: 1) unprofessional communication with parents; and 2) inappropriate comments to students. (Doc. 65-2. p. 62). The notice contains a hand-written note that Plaintiff refused to sign it. (Doc. 65-2, p.62). Plaintiff concedes that she received this documentation. (Pl.'s Dep. p. 9).

Non-tenured teachers should be evaluated every year in accordance with 105 ILCS 5/24A-8. (Doc. 65-2, p. 21). Plaintiff claimed in her deposition that she had only been evaluated on one occasion by Johnson, the assistant principal, in 2009. (Pl.'s Dep. p. 12). Plaintiff also testified that the Johnson evaluation was the only evaluation in her file when she reviewed it and had a copy made in April 2010. (Pl.'s Dep. p.14). Mike Murakami was with Plaintiff when she reviewed her personnel file, but does not recall the details of the incident and could not testify as to the contents of the file at that time. (Pl.'s Dep. p. 15-16) (Murakami Dep.). The secretary of the school initially made the copy of the file for Plaintiff. (Pl.'s Dep. p. 21). Plaintiff then gave her copy to Linda Baldwin of the teacher's union for Baldwin to review. (Pl.'s Dep. p. 21). Plaintiff believes the evaluations were fabricated sometime between April 2010, when she reviewed her personnel file, and June 2010, when she received copies of those documents from the Illinois Department of Employment Security. (Pl.'s Dep. p. 102).

Defendant concedes that the evaluation for the 2006-2007 school year is missing and not present in Plaintiff's file. (Trelow Dep. p. 71). Defendant produced an evaluation from Trelow dated January 15, 2008. (Doc. 65-2, pp. 37-40). This evaluation describes Plaintiff as "satisfactory," and notes deficiencies in category 15, demonstrates positive communication with others—parents, students, fellow employees; and category 19, keeps lesson plans written at least three days in advance, aligned with the District curriculum, and thorough enough for another teacher to follow. (Doc. 65-2, pp. 37-40). Trelow's comments indicate that the "unsatisfactory" categories were regarding the availability of Plaintiff's lesson plans for substitutes, and an incident where Plaintiff told a parent that "I see where she gets it from." (Doc. 65-2, p. 39). The evaluation also contains a notation that Plaintiff refused to sign it because she did not agree with the evaluation. (Doc. 65-2, p. 40). Plaintiff alleges that this evaluation is a fabrication. (Pl.'s Dep. pp. 21-22).

3

Johnson evaluated Plaintiff on March 18, 2009. (Doc. 65-2, pp. 33-26). The Johnson evaluation overall categorized Plaintiff as "excellent," but noticed deficiencies in two areas—No. 22, occasionally rude to others, may lose control in difficult situations and/or unwilling to help others, and No. 23, only does the minimum to maintain certification. (Pl.'s Dep. pp. 65-67) (Doc. 65-2, pp. 33-36). Plaintiff believes she received deficient ratings in these categories due to personal conflicts between her and Johnson. (Pl.'s Dep. pp. 65-68). The existence of this evaluation is uncontested.

Trelow conducted another evaluation on March 25, 2010. (Trelow Dep. p. 85); (Doc. 65-2, pp. 42-47). Again, Plaintiff received a "satisfactory" rating overall. (Doc. 65-2, p. 46). Deficiencies were noted in category 15, demonstrates positive communication with others — parents, students, fellow employees; category 17, assumes responsibility beyond classroom duties during the school day, including, but not limited to, hallway supervision, recess duty, and bus dismissal; and category 25, takes pride in being a Whiteside team member and shows support by attending activities such as fundraises, holiday programs, sporting events, academic events, PTC, Band Parents, and Booster Club. (Doc. 65-2, pp. 43, 45). Additionally, the recommendation contained several comments from Trelow. Trelow referred to problematic incidents, such as Plaintiff telling her class that her toddler is smarter than them and that they'll never make it. (Doc. 65-2, p. 45). He also refers to an incident where Plaintiff allegedly got into a screaming match with a parent after school. (Doc. 65-2, p. 45). Finally, the evaluation refers to an incident where Plaintiff left a confidential email from a parent up on her Prometheus board. (Doc. 65-2, p. 45). The evaluation also contains a note directed to Plaintiff about how Trelow had overheard her tell her students that she wouldn't be teaching at Whiteside if she could get a job at a better school and that the students at Whiteside had too many problems and weren't going to be successful. (Doc. 65-2, p. 47). Trelow also stated that he had received complaints from parents that Plaintiff told her class

4

they were out of shape and then demonstrated her own prowess by doing squat thrusts. (Doc. 65-2, p. 47). Finally, Trelow criticizes her interaction with parents and states that he had another parent say that they left East St. Louis so they would not continue having these kinds of problems like they had with the East St. Louis School District. (Doc. 65-2, p. 47). Once again, the evaluation also contains a note indicating that Plaintiff refused to sign the evaluation. (Doc. 65-2, p. 46). Plaintiff alleges that this entire evaluation is a fabrication. (Pl.'s Dep. pp. 21-22).

Plaintiff also allegedly received two letters of reprimand, although Plaintiff denies either receiving the letters or that they were intended as reprimands. Plaintiff denies receiving the first letter, dated March 19, 2008, which detailed a number of issues including 1) concerns about student confidentiality, specifically telling the entire class that certain students are failing; 2) failure to treat and correct students in a respectful manner; 3) refusal to adhere to written policies, specifically, written policies regarding student incentive trips; and 4) failure to show up to class on time. (Doc. 65-2). Trelow testified that he specifically recalled the incentive trip incident that prompted his written comment. (Trelow Dep. p. 28). He recalled that Plaintiff told him she did not want to bring one of her students on an incentive trip, even though he met the written criteria for doing so, because she did not like the student. (Trelow Dep. pp. 28-29). Trelow also recalls having several conversations with Plaintiff about treating students respectfully, and estimates he received approximately five complaints from parents on that subject. (Trelow Dep. pp. 30-31).

Plaintiff admits that she received another letter from Trelow dated September 18, 2008. (Doc. 78-2, p. 8) (Pl.'s Dep. p. 76). At that time, Plaintiff was out sick and failed to leave her lesson plans or grade book for the substitute. (Pl.'s Dep. pp. 86-88). The letter describes this incident in detail, and also notes that Trelow had received complaints from parents about returning their calls. (Doc. 78-2, p. 8). After receiving the letter, Plaintiff had a meeting with Trelow, Burke, the superintendent, and Vicki Eshman, her union representative. (Trelow Dep. p. 90)(Eshman Dep.

5

p. 13). At the meeting, Trelow attempted to review the relevant policy on preparing for substitutes, which requires a teacher to leave five different sub folders in easy to find locations, which include seating charts, class lists, notes, lesson plans, and miscellaneous activities. (Trelow Dep. pp. 91-93). Plaintiff argued that she had lesson plans, but conceded they were not kept in her classroom. (Trelow Dep. p. 93). Trelow also discussed the issue with parent contacts. Trelow refused to tell Plaintiff which parents were complaining. (Trelow Dep. p. 15). He believes that the number of parents complaining about this issue was more than two but less than ten. (Trelow Dep. p 16). Trelow told Plaintiff to return phone calls and emails within forty-eight hours going forward. (Trelow Dep. p. 16). Trelow recalls that Plaintiff became hysterical and began shouting during the meeting. (Trelow Dep. p. 93)(Eshman Dep. p. 14). Eshman eventually escorted Plaintiff out of the meeting because she felt the meeting was no longer productive. (Trelow Dep. p. 94) (Eshman Dep. p. 15).

Plaintiff repeatedly insisted throughout these proceedings that three of the five above described documents were fabrications, namely the two Trelow evaluations and the March 2008 letter. At the same time, the record contains a letter Plaintiff wrote to the school to rebut the allegations in her notice of non-renewal. (Doc. 65-2, p. 73-75). In it, she details the difficulties she has in controlling her class. (Doc. 65-2, pp. 73-74). The letter also contains a statement that "on the day Mr. Trelow visited my room to conduct my yearly evaluation, he said he overheard me having an inappropriate conversation with my class. I remember the exact conversation . . ." (Doc. 65-2, p. 74). The letter goes on to imply that those statements were taken out of context, but does not deny that the conversation took place. (Doc. 65-2, p. 74).

Additionally, there is evidence that Trelow had the opportunity to evaluate Plaintiff's skill set as a teacher. Plaintiff included a statement that she made to Administrative Law Judge Flex, which clearly states that Trelow "observed me three different times." (Doc. 78-3, p. 17). Plaintiff

6

also admits that Trelow observed her on at least one occasion during her deposition. (Pl.'s Dep. p. 27).

Plaintiff also testified about incidents that could have been the basis for the events described in the contested documentation. Plaintiff admits that she raised her voice to the parents of a girl in her class during the 2006-2007 or 2007-2008 school year. (Pl.'s Dep. p. 92). Plaintiff raised her voice in response to the parent's comment that the parent did not realize she would experience the same problems in Belleville as she had with the East St. Louis school district. (Pl.'s Dep. p. 93). Plaintiff denied that she ever got into a shouting match with a parent. (Pl.'s Dep. p. 94). There was another incident where the janitor reported to Trelow that Plaintiff was in a shouting match with a parent. Plaintiff testified that she and the parent were in agreement, but perhaps talking loudly during that incident. (Pl.'s Dep. p. 228-29). The parent "kind of went off on her daughter." (Pl.'s Dep. p. 229). But overall, Plaintiff characterized that meeting as productive. (Pl.'s Dep. pp. 229-30). Trelow was called to Plaintiff's classroom over the incident, but did not intervene at that time. (Trelow Dep. p. 98).

Plaintiff also admits that she left an email from a parent regarding the personal situation of a student up on her Promethean Board, a type of overhead projector. (Pl.'s Dep. p. 218). Plaintiff did not realize that the email was being projected. (Pl.'s Dep. p. 219). She did not lock her classroom door when she left. (Pl.'s Dep. p. 220). She was not present when children returned to the classroom. (Pl.'s Dep. p. 218). Johnson in particular approached Burke after this incident to report that she did not believe that Plaintiff's employment was working. (Burke Dep. p. 38). This incident is described in the allegedly fabricated March 25, 2010 evaluation.

Trelow testified that he received multiple complaints from parents about Plaintiff's comments to students. (Trelow Dep. p. 31). Trelow discussed those concerns with Plaintiff on at

7

least one occasion. (Trelow Dep. p. 32). Johnson also discussed concerns about Plaintiff's comments to students with her prior to giving her the 2009 evaluation. (Johnson Dep. p. 23).

The Whiteside Administrators never made racial statements to Plaintiff. (Pl.'s Dep. p. 78). The School Board members have never made any racial statements to Plaintiff. (Pl.'s Dep. pp. 79-80).

Plaintiff accused Trelow of racist behavior on a number of grounds. She contends that he did not buy enough snacks or supplies for her children during testing time. (Pl.'s Dep. pp. 82-83). Trelow would send an email to all the teachers that snacks were available and leave them out on a first-come, first-served basis, but Plaintiff would never be free to go get snacks when the email came out. (Pl.'s Dep. p 84) (Trelow Dep. pp. 103-104). However, the actual testing supplies were provided by the state on a per student basis. (Trelow Dep. pp. 103-104). The school does not order other testing supplies, nor does it supply them. (Trelow Dep. pp. 122-123).

Plaintiff also alleges she was never assigned a mentor during her employment at Whiteside. (Pl.'s Dep. p. 200). When she began, there was no formal mentor program, and mentors would have been assigned on an informal basis. (Trelow Dep. p. 54). The state statute only requires mentorship where the mentee has held their teaching license for less than a year. (Burke Dep. pp. 25-26). Burke was unaware whether Plaintiff met the statutory requirements for a mentor. (Burke Dep. p. 26).

Plaintiff also alleges that she was discriminated against because she only received 25 minutes for lunch when other non-black teachers received longer. (Pl.'s Dep. p. 214). Plaintiff conceded at her deposition that some of the teachers with "longer" lunch periods actually had the lunch period and their plan period together. (Pl.'s Dep. p. 214). The plan period is a free period given to teachers to work on their lesson plans, make copies, do paperwork, and grade papers. (Trelow Dep. pp. 34-35). It appears that at least seven other teachers employed by the district did

not have their lunch and plan periods together. (Doc. 65-2, p. 28). Teachers who taught "special" classes, like reading strategies, study skills, art, computers, or library, would not have their plan period next to the lunch period because that is when the special classes were scheduled. (Trelow Dep. p. 35). Plaintiff taught specials. (Trelow Dep. p. 36). Defendant submitted that the lunch period was actually thirty-one (31) minutes and that the six minute difference reflected a three minute break between official periods. (Doc. 65-2, p. 29)(Burke Dep. p. 54). Additionally, the length of the lunch periods was uniform; all teachers received the same amount of time. (Doc. 65-2, p. 29); (Trelow Dep. p. 32). Plaintiff complained during her deposition that her lunch was shorter because her kids would not leave her classroom promptly when class was over. (Pl.'s Dep. p. 216).

In 2009, the year prior to Plaintiff's non-renewal, Defendant did not renew Penny Masur, a third year, white, female teacher due to poor communication and poor interaction with parents and staff. (Burke Dep. p. 31) (Doc. 65-2, pp. 2-3, 51 ). They also did not renew Bridget Cauble, a fourth year white female teacher for violation of the cellphone policy. (Burke Dep.p. 31) (Doc. 65-2, pp. 2-3, 51). Plaintiff identified Masur and Cauble as similarly situated employees in her interrogatories. (Pl.'s Dep. pp. 97-100). Plaintiff also testified that their non-renewal was "legitimate." (Pl.'s Dep. p. 98). Additionally, in 2010 Defendant declined to renew any first or second year teachers, although they rehired a few of them at a later date as funding allowed. (Burke Dep. pp. 31-32).

## LEGAL STANDARDS

### 1. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted), citing FED. R. CIV. P. 56(a)**. On summary judgment, the

9

Court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. **Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).** The party making the motion has the burden of establishing that he is entitled to judgment as a matter of law and no factual disputes remain. **Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999)**. However, where a party has the burden of proof on an issue, they must affirmatively demonstrate with specific facts that a material issue of fact exits and requires trial. **Beard v. Whitley, 840 F.2d 405, 410 (7th Cir. 1988)**. The non-movant "may not rest on the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial. **Fed. R. Civ. P. 56(e)**. A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Albiero v. City of Kankakee, 246 F.3d 927, 931–32 (7th Cir. 2001). See also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).** There is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010); accord Anderson, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

### 2. Racial Discrimination Claims

#### a. Direct Method of Proof

Under Title VII, a plaintiff may resort to either the direct method of proof or the indirect method of proof. The direct method of proof requires a plaintiff to offer either direct or circumstantial evidence that the employee's termination was motivated by race. **Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002)**. Usually, an explicit admission by the employer

10

will satisfy the direct method of proof. **Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 593 (7th Cir. 2008)**. In the absence of such proof, a plaintiff may try to prove discrimination directly by resorting to circumstantial evidence. There are three categories of circumstantial evidence:

> 1) suspicious timing, ambiguous oral or written statements or behavior toward or comments directed at other employees in the protected group; 2) evidence, whether or not rigorously statistical, that similarly situated employees outside of the protected class received systematically better treatment; or 3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

**Good v. Univ. of Chi. Med. Ctr. 673 F.3d 670, 675 (7th Cir. 2012)**. The circumstantial evidence presented by the Plaintiff must "point[] directly to a discriminatory reason for the employer's action." **Id.**

While Plaintiff has decided not to use the Title VII framework in briefing her Response to the Motion for Summary Judgment, it appears to the Court that she is making an argument under the direct framework by pointing to circumstantial evidence that allegedly shows that employees outside of the protected class received systematically better treatment. Plaintiff testified that no one had ever made racist comments directly to her, and that she was the only black teacher at the relevant time periods. The Court will treat Plaintiff's evidence under the second category of circumstantial evidence. Plaintiff claims that there are disputes on the following issues of material fact: 1) Plaintiff received shorter lunch breaks than her coworkers; 2) Plaintiff was treated unfairly in regards to the availability of supplies and snacks; 3) Plaintiff did not receive yearly evaluations like the other teachers; and 4) Plaintiff was never appointed a mentor.[1] However, Plaintiff cannot create a dispute of material fact merely by stating that it is so. **See Goodman v. YRC Inc., --Fed.Appx.--, 2013 WL 6570852 at \* 3 (7th Cir. December 16, 2013)(finding district court did not err when declining to make unreasonable inferences from the**

---

[1] Plaintiff offered other examples of allegedly disparate treatment in her deposition and responses to discovery, but appears to have abandoned those arguments on summary judgment.

11

**evidence)**. Plaintiff must submit evidence on each of those points. **See Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 393-94 (7th Cir. 2010)(holding that plaintiff's unsupported assertions that co-workers were treated more favorably is not sufficient to establish discrimination under the direct method or proof).**

Here, each of Plaintiff's allegations fails under the standard in *Montgomery*. Plaintiff alleged that she was treated unfavorably because she had shorter lunch breaks. However, Defendants submitted the schedule that showed each teacher at Whiteside received exactly the same lunch break, although teachers who did not have a "special" class would be able to combine their plan period and their lunch break. Plaintiff had a "special," as did approximately seven other teachers outside of the protected class at the school. The administration determined who would have a lunch and plan period together based on their assigned classes, not race. Plaintiff also testified at her deposition that she believed her lunch break was shorter because her students would not clear out of her classroom fast enough, which can hardly be considered administrative action. There is simply no evidence that Plaintiff was treated less favorably than her coworkers with regards to the lunch period other than Plaintiff's unsupported assertion.

Plaintiff also alleges she was subject to disparate treatment in the area of supplies and treats for testing. Defendants submitted evidence that the state closely controls the supplies for the testing, and determines the amount of supplies needed down to the individual. Plaintiff never offered any testimony that she did not receive the state supplies. She claimed that she did not receive the snacks, because Trelow always made them available when she was busy and that this was discriminatory because Plaintiff was the only black teacher. This is exactly the same argument the Seventh Circuit rejected in *Montgomery*. Additionally, Plaintiff never submitted any actual evidence of when the emails notifying teachers of snack availability went out, and why Trelow would have

known that time was not convenient for her. Plaintiff may have been unable to retrieve snacks for her classroom, but there is no evidence that the snack distribution was based on race.

Plaintiff argues that she was treated less favorably than the other teachers because she did not receive yearly evaluations. Plaintiff testified as much at her deposition, and now claims that her testimony creates a material conflict of fact on this issue. While Plaintiff disputes the legitimacy of the March 2010 written evaluation, Plaintiff also submitted a "letter of rebuttal" that she admits to authoring, in which she herself described portions of Trelow's March 25, 2010 meeting with her and affirmatively stated that it had occurred. Plaintiff also conceded that she was criticized for an incident where she disclosed a confidential email to her students, and for raising her voice to a parent over a comment that the parent left East St. Louis to avoid this type of behavior; both of these incidents are described in the March 25, 2010 evaluation. At the summary judgment stage, Plaintiff is entitled to an inference that she did not receive written documentation of the evaluations, but the Court finds that at least two meetings regarding evaluations actually occurred, despite the alleged lack of documentation. The Illinois School Code does not require such evaluations to be in writing. Plaintiff's argument additionally fails because she has not submitted any evidence that the other teachers received written evaluations. In the absence of such evidence, it is impossible for the Court to determine that Plaintiff was treated any differently on account of her race.

Plaintiff claims that the fact that she was never assigned a mentor pursuant to 105 ILCS 5/21A-20 is evidence that she was subject to disparate treatment. That statute requires that new teachers be assigned a mentor for their first two years. However, it defines "new teacher" as "the holder of an Initial Teaching Certificate . . . who is employed by a public school and who has not previously participated in a new teacher induction and mentoring program." **105 ILCS 5/21A-5**. Plaintiff has not submitted any evidence that she was the holder of an initial teaching certificate. She

has not submitted any evidence that she had never participated in a new teacher induction and mentoring program. In fact, Plaintiff frequently characterizes herself as an "experienced" teacher. There is no evidence that Whiteside was the first school that Plaintiff taught at. Because Plaintiff has not submitted sufficient evidence that Defendant was even required to provide her with a mentor, she cannot point to her lack of one as evidence of racial discrimination.

Finally, Defendants have testified that two white female teachers were also terminated due to concerns about their teaching performance. At least one of the employees was terminated after her third year. Not only has Plaintiff failed to submit evidence that employees outside of the protected class were treated better than her, this evidence suggests that some employees outside of the protected class were actually treated worse. Plaintiff was given an entire additional year to work on her issues, while a teacher outside of the protected class was not. The Court finds that none of Plaintiff's proposed circumstantial evidence shows that she was the victim of racial discrimination.[2]

      b. **Indirect Method of Proof**

Under the indirect method, the court must rely on the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 782, 802-05 (1973). To establish a prima facie case of discrimination, a plaintiff must establish 1) she is a member of a protected class, 2) her job performance met her employer's legitimate job expectations, 3) she suffered from an adverse employment action, and 4) another similarly situated individual who was not in the protected class was treated more favorably. **Coleman v. Donahoe, 667 F.3d 835, 845 (7th Cir. 2012)**. If the plaintiff can establish a prima facie case, the burden shifts to the defendant

---

[2] Plaintiff's Response appears to contain an oversight on this point. It would appear that the best argument Plaintiff could make is that her termination is an example of circumstantial evidence of disparate treatment because she was terminated for allegedly racial reasons. But Plaintiff does not include the actual adverse event of which she complains in her list of relevant evidence. Again, this may be due to Plaintiff's decision not to use the relevant legal framework in drafting her Response. For reasons enumerated later, the Court finds that Plaintiff's termination was not racially motivated and therefore the oversight is of little practical importance. Still, the omission is noteworthy.

under the analysis in *McDonnell Douglas*, so that the employer may offer a legitimate non-discriminatory reason for its decision. **McDonnell, 411 U.S. at 802**. The burden then reverts to the plaintiff to show that the stated reason was pre-textual. **Id. at 804-05**. Pretext is a lie, a phony reason; it is not a mistake or misunderstanding. **Silverman v. Bd. of Educ. of Chi., 637 F.3d 729, 733-34**.

The inquiry into whether an employee is qualified for her job and the inquiry into whether an employer's stated reason for discharge is pretextual is highly interrelated, particularly when the reason for termination is that the employee is not meeting the employer's legitimate job expectations. **Everroad v. Scott Truck Sys. Inc., 604 F.3d 471, 477 (7th Cir. 2010)**. If necessary, a court may skip over the initial burden-shifting analysis to consider the question of pretext. **Adelman-Reyes v. Saint Xavier Univ., 500 F.3d 662, 665(7th Cir. 2007)**.

Plaintiff is correct that credibility issues are not relevant to a Motion for Summary Judgment. Plaintiff is incorrect that issues of motive and intent, particularly pretext, are not appropriate for summary judgment. The case[3] that Plaintiff cites for that proposition is not precedential case law at all, rather it is a dissent to a denial of a writ of certiorari to the Supreme Court, which is not binding on this Court. Additionally, Plaintiff's position is inconsistent with the Seventh Circuit's holding on this issue. **See, e.g., Morgan v. Harris Trust and Sav. Bank of Chicago, 867 F.2d 1023, 1026 (7th Cir. 1989) ("Summary judgment will not be defeated simply because issues of motive or intent are involved, and is proper where the plaintiff fails to indicate any motive or intent to support plaintiff's position.")**.

For the purposes of summary judgment, the Court finds the following facts are true: 1) Plaintiff left a confidential email from a parent on her Prometheus Board for other students to see; 2) Trelow overheard a conversation on March 25, 2010 between Plaintiff and her students in

---

[3] **Hardin v. Pitney-Bowles, Inc., 451 U.S. 1008 petition for cert denied (1981) (Rehnquist, J., dissenting)**.

which Plaintiff told her students that they were unlikely to succeed and that she would teach at a better school if she could; 3) Plaintiff raised her voice to a parent during the 2006-2007 school year because the parent commented that she moved out of the East St. Louis school district to get away from "this type of thing;" 4) a parent began yelling at her daughter during a parent-teacher conference and Trelow was called to the scene; 5) Plaintiff in September of 2008 did not adequately prepare for a substitute teacher by leaving her grade chart and lesson plan in the classroom; 6) the September 2008 letter also put Plaintiff on notice that the administration had received complaints from parent about Plaintiff's return of parent contacts, and the administration attempted to address that issue at the meeting with Eschman; 7) Plaintiff received a written evaluation from Johnson in 2009 that documented difficulties interacting with others, including rude behavior.

While many of the above factual statements come directly from Plaintiff's testimony, Plaintiff has argued that two of the issues create genuine issues of material fact that cannot be resolved on summary judgment.  First, she argues that it is disputed that she never returned parents phone calls.  But the letter Trelow sent Plaintiff indicates, in part, that the problem is that Plaintiff refused to return phone calls within 48 hours.  Plaintiff has submitted no evidence that she did so.  She testified that she kept all of her contact logs, but never submitted them into evidence, and her testimony only spoke to the issue of whether she returned contacts at all.  Therefore, while the Court accepts as true Plaintiff's assertion that she returned parents' phone calls, it regards the Defendants' evidence that the administration was concerned about the amount of time it took for Plaintiff to return contacts as unchallenged.  Second, with regards to the email incident, Plaintiff claims Defendant cannot dispute that she was looking at the email to return a parent contact and that the students who saw it were not authorized to be in the classroom.  So the Court finds. However, the issue here is not whether Plaintiff can articulate an excuse for her behavior, but

16

whether her behavior met the legitimate expectations of her employer. Her employer has testified that it did not. Plaintiff has provided no evidence to the contrary.

Plaintiff has not met her burden of showing that she was meeting her employer's legitimate expectations. She was non-renewed due to concerns about unprofessional communications with parents and students. Even declining to consider all of the disputed evidence in this case (which is substantial), it is clear from the undisputed evidence that the administration had grounds for this course of action. Plaintiff conceded at her deposition that she had left a confidential parent communication up on an overhead projector. She also conceded that she raised her voice to a parent during a conference on one occasion. Further, she conceded that another parent-teacher conference devolved into the parent yelling at her child. She also admitted that she left a substitute unprepared to teach her classes. Trelow testified that he had received complaints from parents about Plaintiff's willingness to return parent contacts within forty-eight hours, and Plaintiff never submitted any documents that she had returned parents' contacts in a timely manner. Plaintiff was also overheard telling her children that they were unlikely to succeed and that she would teach at a better school if she could. Finally, the only written evaluation Plaintiff received specifically mentions issues with communication, and describes difficulty communicating appropriately with others. The Whiteside administrators testified that they were aware of these incidents and that they found these incidents unprofessional and problematic. As the employer, their judgment about whether an employee is meeting reasonable expectations is entitled to some deference. **See Ineichen v. Ameritech, 410 F.3d 956, 961 (7th Cir. 2005) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance or be too hard on its employee.")**. This is ample evidence for the Court to conclude that Plaintiff was not meeting her employer's legitimate expectations.

Additionally, even if the Court were to conclude that Plaintiff was meeting her employer's legitimate expectations, there is no evidence that similarly situated employees outside of the protected class were treated differently than Plaintiff. **See Hester v. Indiana State Dept. of Health, 726 F.3d 942, 947-48 (7th Cir. 2013) (finding that similarly situated employees are employees who were subject to the exact same situation as Plaintiff)**. Plaintiff identified Masur and Cauble as two teachers that were similarly situated outside of the protected class. Both were dismissed by the school district. But Plaintiff has submitted no evidence that they were treated any differently than her. In fact, Masur was actually treated less favorably than Plaintiff. Although they had similar types of problems with professional communication, Masur was dismissed after her third year, while Plaintiff was given another year to improve. Plaintiff cannot point to any teachers outside of the protective class who had problems with communications with parents, staff, and students, who were then given tenure after their fourth year. Therefore, the Court finds that Plaintiff has failed to make out a case of prima facie discrimination.

Even if Plaintiff had been able to make out a prima facie case, Defendants would still be entitled to summary judgment because Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's non-renewal and Plaintiff has not submitted any evidence that the reason is pre-textual. Plaintiff has offered her own testimony that Defendants stated reason is a lie and that the documentation offered by Defendants in support of the non-renewal is (in part) fabricated. Even assuming that were true, there is still ample evidence of unprofessional communication in Plaintiff's own deposition testimony as discussed above. Plaintiff has not submitted any evidence that racial discrimination is the real reason for Defendant's action. Plaintiff has therefore failed to rebut Defendant's stated reason for her non-renewal.

## CONCLUSION

Plaintiff has not submitted sufficient evidence under the direct test for discrimination. Additionally, under the indirect method, she has failed to make out a prima facie case of discrimination or to show pretext on the part of the Defendants. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment. The Clerk of the Court is directed to enter judgment in Defendant's favor and close the case.

**IT IS SO ORDERED**

**Date:** 1/2/2014                                                                 */s/ Stephen C. Williams*
                                                                                                        Stephen C. Williams
                                                                                                        United States Magistrate Judge